Our next case for argument is 22-1998 Vertek Vision v. Assembly Guidance. No, no, don't sit down. We're waiting for you. I apologize, Your Honor. Good morning. May it please the Court. The decision by the Patent Trial and Appeal Board finding certain claims unpatentable in Grounds 1 and 3 can and should be reversed for at least three reasons. First, the Board entered an outcome-oriented and improper claim construction for the term identifying a pattern, specifically the term pattern within it. Instead of applying the plain and ordinary meaning of that term as it said it was going to do, it instead injected into that term an assumption about how a pattern is identified, an assumption that was contrary to the only expert testimony on that issue and that was not based on any of the intrinsic or that was that issue. Second, the Board failed to recognize that the steps of identifying a pattern and scanning a target as directed by the identified pattern are separate and distinct steps, where first you have to identify a complete pattern and then you have to scan the targets as directed by that pattern. The only findings that were made by the Board were that a single target was scanned in any of the cited prior argument. Third and finally, in underlying both of those initial two findings, the Board here improperly shifted the burden with respect to persuasion when it comes to the issue of obviousness in this case. The Board did so by making findings on behalf of the petitioner that the petitioner never asserted and placing itself in the position of an expert finding, making expert determinations with respect to the prior art and the claim construction that then became a core part of the Board's decisions. Because those decisions shifted the burden of persuasion, the Board's decisions were in error. Now I'd like to Can I ask you on your second argument, just briefly, where did you make that identifying a step needs to be separate and distinct? Where did you make that argument below? The arguments were made in the patent owner preliminary response and in the response to the institution. Would you happen to have a citation? I don't, Your Honor, not off the top of my head, but I can find that for you. In both the preliminary response and your brief, the patent brief? Yes. And those arguments were made, Your Honor, based off of the argument, the primary argument that these references don't cite, identify a pattern. And the arguments that were made in the preliminary response and then in the response were both made based off of that argument that because there isn't a pattern identified, you then can't, don't have any pattern to then be scanned based on the language of the claims. So let me turn back to the... Do you understand the Board in this case to have relied on, and help me pronounce this name right, is it Dr. Mohazab? Mohazab, yes. Do you understand the Board to have relied on his testimony in reaching the obviousness conclusions that it reached? They sort of, they do and they don't. They identify the petitioner's position in its petition regarding the motivation to combine. The petition itself, and as you may have seen from the and he sort of reviewed it and signed off on it. So the petition mimics his declaration almost exactly. And in... Well, and the petition cites his declaration. Absolutely. In those places as the evidentiary support for their arguments, correct? Correct. Yes, Your Honor. So I guess, how is it, you started by saying that they do and they don't. Do you understand the Board's decision to be predicated on accepting, in part, Mr. Mohazab's declaration as evidence that supported the conclusion they reached? His declaration, yes, Your Honor. Yes, and you moved to exclude that declaration below, right? Yes, Your Honor. And you challenged the reliability of it and you brought that challenge here on appeal to us? Yes, Your Honor. Why don't you address that issue? Why is it that you think the Board erred or, in this case, abused its discretion by entertaining Dr. Mohazab's declaration? Your Honor, they abused their discretion here because Dr. Mohazab's declaration was really a ratification of the lawyer's articulation of their position. He testified in his deposition that he spent five total hours reviewing the document. Actually, I'm sorry, five total hours in preparation in total prior to his deposition. So that was five total hours to review all the prior art, review the file history, review a declaration that was, I believe... Does that include discussing that five hours? Does that include discussing with the attorney what the contents of the declaration would be? He testified that he did speak with the attorney about it. That's not what I asked. I mean, look, I mean, we know the attorneys help draft these expert declarations, and as long as they're based upon what the expert thinks and says, you know, they're still allowed to help draft them. And I know you want to emphasize this number five, but five hours, but is that reviewing the declaration after the attorney drafted it how long he spent talking to the attorney? His testimony was that he had spent five total hours in total. So that was prepping for his deposition. That was reviewing all the documents and the file history. I thought he spent a lot more time prepping for his deposition. I thought it was five hours reviewing this declaration before signing it. And then he says nine hours to prep for the deposition, does he not? Yeah, I apologize, Your Honor. Yes, I'm mixing those two. Well, I guess, I know you want to focus on this five hours. I want to know if that five hours was all that he spent on this declaration, or if he spent hours and hours sitting down with the attorney talking about this and going through things, and the attorney took notes and then wrote the declaration, and then he spent five hours reviewing it. Because those two things are different stories for me. And I don't know what the answer is, because it doesn't, to me, say in the record, whether that five hours is inclusive or exclusive of prior discussions with the attorney. Do you know? I don't think the record reflects the specific division you're looking for, Your Honor. Well, but didn't you, in the deposition, ask him how much time he had spent on this matter? And he said five hours? Yes, that is what he said. That five hours, that seems like it's got to be a total, right? I think it is, Your Honor. Yes, and that is accurate. I'm trying to address Judge Hughes's question, which is, of those five hours, was it four and a half discussing, specifically, his conclusions? Or was it a half an hour of discussion and four and a half hours reviewing the documents? The reality here is that you've seen the scope of the record here, and that's a pretty significant amount of paper. Well, let me push back a little bit on that. It's a short patent. He's in industry, right? He's already familiar with this technology. The prior art was presented to him by the attorney. He didn't have to go out and find it. And as you noted, he admits that the attorney drafted the declaration. The board, which is the fact finder here, says five hours was not necessarily insufficient time for the review. How do we, as an appellate court, say that that's a clearly erroneous finding? I understand the challenge that you're talking about, Judge Stark. And I don't think that the core issues in this appeal really determine whether or not Dr. Mohazab's declaration comes in. Because if you look at the declaration, especially with the issues of motivation to combine, and addressing the substantive issues, such as whether or not the proper construction of the word pattern or the term patterns apply. To be clear, you think if Dr. Mohazab doesn't come, his declaration doesn't come in, you win. But what you're arguing now is, but there are other ways we can win if you want to avoid that issue. Is that correct? Yes, Your Honor. Okay, I just want to make sure you're not saying you don't think the issue of Dr. Mohazab's deposition is important or not. You're not sort of dispensing with the issue. Not at all, Your Honor. As a matter of fact, we think that the instruction from this court and the instructions in front of the Patent Triennial Appeal Board emphasize the importance in having an independent expert that's going to be providing truly distinct and separate opinions that the board can then rely upon. And if we have a situation like this, where at least all the facts don't add up in terms of an independent... I'm not sure what you mean when you say independent expert. Don't you just mean that the party's expert is qualified? I mean, they're never going to be independent of the party. I mean, if it's independent, the PTAP would have to... I see you're into your rebuttal time. Can I just ask you this? Because it's in both of the obvious combinations, on the motivation to combine, the main ones that you're appealing. And let's just assume we disagree with you on all your other stuff, on the claim construction and whether these disclose and that, you know, the claim construction is okay, the prior art references disclose everything in your patent, and it comes down to motivation combined. And speaking of the Briggs and Bridges combination, on page 47 of the board's decision, they appear to find that even without the expert's testimony, that the prior art itself discloses a motivation to combine. Why isn't that sufficient, whether or not we let the expert in? Well, let's assume... I'm not sure that I agree with the decision from the board or the comment from the board on that page. But that would be a new motivation to combine that wasn't asserted by the petitioner. So there's a problem... Okay, let's assume we disagree on that, too. Okay. It is possible... There's been substantial evidence for this conclusion that because I think it's Briggs provides alternatives of Angular and 3D, that that itself would lead to a motivation to combine Briggs and Bridges. I think the answer to your question is, assuming that it's okay for the board to raise new arguments and that they look at the references themselves, the motivation can come from the references. Well, I'm not sure what the new argument here is. What was their view? What was the expert's view on why you combined these? The expert's view was just a pure knowledge of the existence of these two elements itself, and then a conclusory statement from their expert saying that it would be motivated to combine these two elements. That sounds like an awful lot like what the board just said here, which is based on a reading of the patents rather than relying on the expert. It's pretty thin. I think it's a pretty thin theory in terms of motivation to combine. I don't think it meets with the KSR requirements of... Well, that's what I'm asking. Why doesn't it meet with KSR? And why isn't it just because this does not seem particularly complicated? And as the board said, there is a limited number of possibilities. Why isn't it kind of just common sense and common knowledge that you would try 3D rather than angular? Well, I'm not sure it's true that it's a limited number of possibilities. I also think in this circumstance, combining... So just to be clear, I want to clarify that in KSR language. KSR requires that the reference make clear that there is a finite number of possibilities. And you're saying no references here make that clear, nor did the expert testify to that effect? That's correct, Your Honor. Okay, keep going. I see I've got about a minute and a half left. One more. When you said earlier the board relied in part on Dr. Mohazab and partly didn't rely on him, where does motivation to combine fall in light of what Judge Hughes read to you? Did the board rely on the expert for motivation to combine or not? It did in terms of his declaration, but what's important is that in the deposition, there was some additional testimony that was given that the board referenced and then discarded appropriately because it was provided in response to inappropriate questions. So you would have us read when the board says, we find the support provided in the petition to be sufficient, even absent additional support by petitioner's declarant, that they're only excluding what the declarant said in the deposition? Yes, I believe so. But they are relying on what the expert said in the petition? For what it's worth, yes, Your Honor. Thank you. I'll reserve my remaining... We'll restore your rebuttal. Thank you, Your Honor. Mr. Hilton, please proceed. May it please the court, Your Honors. We agree with the board's finding regarding grounds one and three in the inter partes review position. We believe that the board properly construed the claims... Can we just jump right to that motivation to combine issue that I was talking about? I am a little confused about what the board was doing there because, I mean, KSR does allow a somewhat relaxed look at obviousness, but it still has to... the references have to show not just how you would combine them, but why you would combine them. And where in any of this record is that why answered? The board found it in the art. The art is very close. And as was pointed out, the art had... Where? So point me to the art and show not how it can combine because that's clear. I mean, it's not hard to sub in the angular for the... or the 3D for the angular. But do those statements in the patent that talk about those options explain why you would do it rather than just provide them as options? Yes, it provides different levels of resolution. Why don't you... no, why don't you go take us to the reference and show us where... To the reference itself? Because I think that she's asking a very precise question. Sure, absolutely. Where in the art is this? So show us exactly where in the art this is. And if there's anything else in the record that shows the why, I'd be happy to hear it, but I don't think there is. This is what the board relied on. It relied on the statement. I'm looking at the brigs and bridges thing. I think it's stronger than the other one, which is, I think, not good for you. But if you have a why in the other combination, that's fine. I just, I don't see a discussion of why. I just see, well, these are two options that were in the art, so it would be easy to swap one out for another. Understood. But I don't think that's good enough under KSR. So, findings. The reference states that by using two cameras in this... What's the page number? Sorry. This is on the Joint Appendix 757. Which paragraph? 49. Okay. Where in the paragraph? So reading each camera. So this first is talking about the single camera and says... This is four-inch light source camera. In this way, the retroreflector images are readily distinguishable from the background. Both sensitive array. I'm sorry. I don't know where you're reading from. This is in the center, about the center of paragraph 49. But then it moves to, by using two cameras. By using two cameras a little farther down in this way, the principle of triangulation can be used to find the three-dimensional coordinates of any SMR-48 within the field of view of the camera. In addition, the three-dimensional coordinates of the SMR can be monitored as the SMR-48 is moved from point to point. The use of two cameras for this purpose is described in another reference that's cited here. So the use of two cameras allows the moving and it provides the more accurate information. Okay. But this is my problem. This just says what two cameras do. What you just added that the use of two cameras is more accurate. Where does it say that? I don't see that language. Literally, I see it in the monitoring of the SMR being moved. Because it allows that functionality. That's a problem for you. Because the why is this is more accurate. But I don't think, or more efficient, or works better, or something like that. But I don't see that anywhere. And the board certainly didn't cite anything to say that. No, it did not, your honor. But I think those skilled in the art would know that when you find the 3D. How are we to know this? This is the problem in these cases is, you know, I don't even think your expert says that. Even if we were to let it in, which I think it's pretty suspect the way this report was generated. But even if we were to let it in, I don't think the expert says it would be more efficient, or would work better, or this is why you would do it. Does he? There are the two alternatives provided in the reference. Again, this is the problem. And I don't mean, you know, to go over this again and again. But just saying there are two alternatives doesn't explain why you would go from one to the other. Or why you would combine the references in that way to do it. And you articulated a good reason, which is it's more accurate. And that's, you know, throughout the, you know, the arguments and stuff. But there's nothing in any of this record that says it would be more accurate. That's why you would do it, is there? I understand. The board found on substantial evidence that it was sufficient there. They didn't point to a particular statement. But they didn't even say that you would combine them because it would be more accurate, did they? No, they presented as because there were two alternatives for achieving this. I know that opposing counsel said there are other ways. But there's nothing in the record about other ways. I mean, either you're going to find three-dimensional coordinates, or you're going to find angular directions. There's no other way in the record or any other way we've heard of that we can do that. So there really aren't those two alternatives. I don't think that helps you. All that does is tell me the why. It still doesn't tell me, or the how. It still doesn't tell me the why. But this is, this is, this, I'm just going to make sure this is the best you've got for me. This is, this is what the board relied on in Briggs for combining the references. And you don't have anything, let's assume that we don't throw out your expert's declaration. Is there anything in it that goes in more detail into the why? The expert report talks about these being known tools to use in the industry. And that there would have been knowledge, as counsel for Palin has noted. But you have to agree, right, that just because a bunch of things are known in the industry, that, I mean, God, that would turn obviousness on its head. I mean, hindsight would run rampant if just the mere fact of things being known was sufficient to, like, then piece them together without that why piece. Agreed, Your Honor. But I think. I think you're right. I think that he did just say they're known. Is that fair? Is that a fair assessment? Yes, he said they were recognized. Yes, that is a fair assessment. But as KSR dictates, where there are a limited number of things that can be used, that the court should look to whether it would have been obvious to combine these things, where there are a limited number of options and ways you can do things. But wouldn't we have to hear from your expert on that? Like, I mean, at this point, there's a reference that discloses two things that are different from each other. And there's no doubt that there are differences in the way they operate and how they function. I think you're probably right. I think probably the 3D would be more accurate. I think there's a lot of reasons, actually, that we came up with why we would do it. But the problem is, I don't see them in the petition. I don't see them in the expert report. And I don't see them articulated expressly in Briggs. I agree, Your Honor, with that. I think what the board did is the board applied the obviousness standard and found that to be the case. I mean, the obviousness standard requires, as KSR dictates, reference to even common sense, to some extent, of identifying there are limited ways you can do something, and one is shown, the reference shows that there are two that can be done. Again, I said I wasn't going to repeat myself, but I'm going to. I guess I get to do that. The board didn't even say there are limited options here. And the patent discloses these options. And it would have been obvious to combine and go to the 3D because it would have been more accurate. If the board would have said that, then at least we would have that statement, and then we'd be arguing about whether the references support that or not, whether the board was just making it up. But the board didn't even say that. I mean, I don't think they actually applied the right obviousness standard. Understand, we believe the board did provide sufficient evidence of this, and the board did support it, and that the substantial evidence of the record does support the obviousness finding. We're talking about the expert. If you were to overcome the obstacles that have been mentioned by my colleagues, can you prevail if we strike the expert? We represented at the hearing that our position did not actually rely on that, that we, our petition would... Now we have the board's analysis, and while they don't seem to rely on the expert much, there's at least one place, I think, where they say we're persuaded by the expert, and other places maybe where they cite to the petition, which cites to the declaration. If we parse through that and we were to strike the expert, can we still find substantial evidence? I believe there is still substantial evidence to support the board's decision. In looking at the art and the arguments that were made, I think the board... I don't think that the board relied on the expert in this sense, and we represented at the hearing that our position didn't necessarily rely on the expert. I have to be honest with you. I was very troubled by the expert testimony in this case. I mean, five hours, I don't really have any sense of what a hard and fast rule ought to be for the amount of time someone spends getting prepared, and had your expert said, oh, well, I didn't have to spend a lot of time reading the three or four prior art references in the patent because I was already familiar with them. Like if he had... But it appears he didn't have much familiarity with patent law for sure, or with these patents based on his deposition, and the idea that he spent a total of five hours coming to sign from start to finish involving research and review a document that you drafted that has 121 paragraphs and is 56 pages long. That is a deeply troubling thing to me as a starting point. However, if his deposition, he had really demonstrated a complete understanding of all of the issues that were present in his declaration, you know, perhaps that could overcome the concern. 17 separate times your expert suggested that he didn't think references had to be combined. 17. He doesn't seem to understand the difference between anticipation and obviousness. He doesn't seem quite clearly to even understand what his own declaration said. He sure doesn't understand the legal concepts. I don't know what to do with that. I'm a little horrified. I mean, I think, you know, I almost wanted to say, did you take him drinking before the deposition? You know, what happened? Because this is a colossal collapse. You couldn't have walked out of that deposition feeling like nailed that one. You know, this was like, this is, you know, the nuclear bomb just dropped on your case, you know, in terms of his credibility. And so I don't, I don't know what to do with that piece. It's really troubling. And I'll tell you, I look and there's not a lot of standards out there. We don't have, haven't said a lot on, you know, what makes an expert reliable or credible in a Dahlberg sort of way when they should be excluded under circumstances like this. I'd like your input on that. This issue was raised and you barely addressed it in your reply brief. All you said in your reply brief is the board decided what it should, decided we should follow it. You said nothing specific. Well, the expert is an expert on the technology. This was the expert's first time being an expert having to do with anything with patent law. The issues in the case were obviousness. He was asked early in the deposition about anticipation. In his defense, anticipation wasn't one of the issues that he was actually rendering opinion on. And yet... Well, to be clear, at the beginning of the deposition, when asked if these were all the opinions he had about the issues in this case, he said, oh, no. And to be, when he was asked, does your declaration disclose all of the facts that were important to you in forming these opinions? He said, no. So if I were on the other side at that point, I'd probably want to explore what else he might be thinking that is not contained in his declaration, too. So it feels kind of fair that they would ask other questions. But I don't think they started getting into anticipation with him until after he said, oh, my opinion isn't that these things have to be combined. I don't think they have to be combined at all. And then suddenly they started exploring anticipation, wondering, does he have an opinion on anticipation? You know, I think in fairness, when I read the deposition, they didn't ask him about anticipation until after he asserted that he could point nowhere to anywhere he said there was a reason to combine these references because he doesn't think they have to be combined. That is what he believes. I mean, as the board pointed out, the opinions he presented in his declaration are his. I mean, he was deposed for over a day, as you've read. And those opinions are his opinions. And he didn't sway from those. But his understanding of patent law might have been a little weak, admittedly. But he said it would be obvious to combine two things in his declaration. And then in his deposition, he said there's no need to combine them. And so, no, I can't point to any reason why they'd be combined. Because the art is so close that it's... He didn't say that part. He didn't say that part. That's right. Is there anything in the record about whether you all worked with a non-testifying expert before retaining Dr. Mohazab? And is there anything in the record about whether there's any language difficulty here for this expert? English is his second language. Is that in the record? Oh, no. But there's nothing in the record about working with a non-testifying expert either. Okay. Okay, thank you, counsel. We'll restore two minutes of rebuttal time for the appellant. Thank you. Judge Stark, I wanted to answer your question. You had asked about those citations. I'd point to the preliminary response by the patent owner at page 29, where we address the timing nature of that scanning step. And then the patent owner response pages 51 to 57. Other than that, unless the panel has any additional questions for me, I'll cede the rest of my time. Thank you, counsel. Since the cross-appeal was never addressed, I think that brings the argument to a conclusion. Thank both counsel. This case is taken under submission.